DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant Tammy I. and granted permanent custody of appellant's four children to appellee Lucas County Children Services ("LCCS"). For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant is the mother of the children at issue in this case: Jordan R., born in April 1998, Tyler R., born in June 2001, and twins Zachary R. and Dean R., born in January 2003. The father of the children, Buddy R., is not a party to this appeal. The facts of this case are adduced from the permanent custody hearing held on February 1, 2006. Appellant, the LCCS caseworker, and a counselor for one of the children testified.
 {¶ 3} Pamela Cannon, appellant's caseworker of record, testified that she first began working with appellant in September 2004, but the case was opened in November 2003. At that time, LCCS filed a complaint based on allegations of medical neglect, physical hazards in the home, substance abuse, and domestic violence. The children were removed from the home. Temporary custody was awarded to a maternal cousin after the children were adjudicated to be dependent and neglected.
 {¶ 4} The initial case plan for appellant included securing safe new housing, scheduling dental appointments and developmental assessments for the children, undergoing substance abuse assessment and treatment, and attending counseling. The goal at that time was reunification.
 {¶ 5} Cannon testified regarding the special needs of the children. All have asthma and skin problems including eczema for which they need medication. They all have delays in their speech. The twins, Dean and Zachary, had misshapen heads when they were removed from the home. With physical therapy and services from the Early Intervention program since being removed from appellant's home, all the children have made developmental progress.
 {¶ 6} As a result of appellant's failure to make any apparent progress with the case plan recommendations, by July 2004, LCCS had changed its case plan goal to permanent custody. Temporary custody of the children was transferred from the maternal cousin to LCCS. The children were placed in foster care. On September 8, 2004, LCCS filed a motion for permanent custody.
 {¶ 7} Relative to appellant's housing issue, Cannon testified that since the case was opened, appellant had been evicted from a suitable, though small, apartment. For a period of time appellant lived with friends and then moved in with her mother. At the time of the permanent custody hearing, appellant was still residing with her mother. Regarding maintaining employment, Cannon described appellant as historically "chronically" unemployed. However, Cannon noted that appellant had maintained employment at a temporary staffing agency more recently for about three or four months.
 {¶ 8} On November 19, 2004, LCCS dismissed its motion for permanent custody based on appellant's engagement in services during that month. Appellant had just completed a non-interactive parenting program, a domestic violence survivors' group program, and alcohol abuse treatment program at Fresh Attitudes.
 {¶ 9} However, in January 2005, appellant admitted to relapsing with her abuse of alcohol. Cannon testified that she urged appellant to seek relapse treatment "right away." On June 10, 2005, LCCS filed another motion for permanent custody based on appellant's relapse, failure to follow through with a relapse program recommendation, and "sporadic" visitation with the children. Appellant testified that she only missed weekly visitations when she was sick. Cannon also testified that based on observations by LCCS personnel during visitation at LCCS, an interactive parenting program was recommended for appellant. However, since appellant had not completed a relapse program, she could not enter the interactive parenting program. Regarding her delay in seeking relapse services, appellant testified that during 2005, she was having transportation, housing and employment problems. Further, she testified that she was helping family because her father was seriously ill.
 {¶ 10} Shanna Storch, Jordan's counselor at the Henry County Hospital Help Center also testified. Jordan was referred there in 2005, because of problems such as impulsivity, bed wetting and nightmares that he was experiencing in the foster home. In May 2005, in a counseling session, Jordan disclosed sexual abuse by his father. Jordan also discussed nightmares about domestic violence between his parents and between his father and brothers. Storch subsequently diagnosed Jordan with Post Traumatic Stress Disorder and Attention Deficit Hyperactivity Disorder. Storch described Jordan's progress in counseling as good, and that while being in a stable environment with a supportive foster family, he has thrived. She also added that although she believes that Jordan still loves appellant, at best, Jordan has gone "back and forth" with regard to his desire to live with appellant again.
 {¶ 11} Cannon testified that when she shared Jordan's disclosure of sexual abuse with appellant, appellant was not supportive and questioned the late timing of the disclosure. Appellant testified that Jordan had never made such a disclosure to her and she was not otherwise aware of any alleged sexual abuse of Jordan. Appellant also testified that subsequently, she has not discussed the allegations with Jordan. However, Storch testified that in a session after a June 2005 visit with appellant, Jordan began to put his hands over his ears, rocking in place and saying, "Don't tell, don't tell, never, never, never, tell." This raised concerns with Storch that possibly appellant had indicated to Jordan that he should not talk about any sexual abuse by his father.
 {¶ 12} In October 2005, when pressed by an upcoming court date, appellant submitted to another substance abuse assessment at Compass and was found to be alcohol dependent. At that time there was no availability of treatment at Compass. However, Cannon testified that she informed appellant that there was immediate availability at Fresh Attitudes. Appellant chose not to engage in services at Fresh Attitudes and instead sought services and was accepted on December 15, 2005, for relapse treatment at Unison. Cannon agreed that appellant's status was "basically just commencing services."
 {¶ 13} Following the testimony, the attorneys made closing remarks. While the children's guardian ad litem did not testify, her report was admitted, and she provided closing argument. (The guardian ad litem filed a report recommending that LCCS have permanent custody of all four children.) In closing argument, she recognized that appellant may have had a difficult time with the illness and subsequent death of her father in 2005. However, she noted that appellant still has children "who come first." The guardian ad litem also expressed her doubt that appellant could have handled her children's special needs at the same time. Finally, she noted that progress the children have made since they have been out of appellant's care.
 {¶ 14} Following closing arguments, the trial court ruled from the bench that the motion for permanent custody would be granted. In so ruling, the trial court remarked that appellant "snatched her success from her through relapse" with "active alcoholism that interfered with, frustrated and made her reach the conclusion that she could apparently coast for eight, ten months." The court further commented as to appellant's belated efforts that it was "too little, too late," and that that the children needed permanence. He believed that these needs would best be met by a grant of permanent custody to LCCS.
 {¶ 15} At the hearing, the LCCS attorney opined that under R.C. 2151.414(B)(1)(d), due to the amount of time that LCCS has had temporary custody of the children, the agency need only demonstrate the best interest of the children factors of R.C.2151.414(D). However, in the trial court's post-hearing journal entry, the trial court made additional findings under R.C.2151.414(B)(1)(a) and (E)(1), (2), (4), and (14) relative to the conclusion that the children cannot and should not be placed with either of their parents within a reasonable time. Appellant now appeals, setting forth the following assignment of error:
 {¶ 16} "The trial court's decision terminating Mother, Tammy I * * *'s parental rights was not supported by clear and convincing evidence and was against the manifest weight of the evidence."
 {¶ 17} Following an agency's reasonable reunification efforts, R.C. 2151.413(D)(1) mandates that the agency file a motion requesting permanent custody "if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."
 {¶ 18} Likewise, under R.C. 2151.414(B)(1):
 {¶ 19} "[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 20} "(a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. * * *.
 {¶ 21} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."
 {¶ 22} R.C. 2151.414(D) lists the factors that the court shall consider in order to determine the best interests of the child. That section provides:
 {¶ 23} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353
[2151.35.3] or division (C) of section 2151.415[2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 29} As to whether "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents," R.C. 2151.414(E) provides:
 {¶ 30} "In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 31} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 32} "(2) * * * chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 {¶ 33} "* * *
 {¶ 34} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 35} "* * *
 {¶ 36} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 37} "* * *
 {¶ 38} "(16) Any other factor the court considers relevant."
 {¶ 39} As set forth in the above-quoted statutory sections, the trial court's findings must be supported by clear and convincing evidence. The Supreme Court of Ohio has held that clear and convincing evidence is:
 {¶ 40} "* * * that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 41} In her assignment of error, appellant contends that LCCS failed to establish the statutory factors of the best interest of the children by clear and convincing evidence. In particular, appellant asserts a lack of evidence on the first and fourth factors. Appellant argues that there was no evidence regarding the interaction and interrelationship of the children with appellant, each other, or the foster caregivers. Appellant adds that in addressing the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, there was no indication of whether relatives were available for placement. Further the caseworker testified that an adoptive home had not yet been identified for the children.
 {¶ 42} Although appellant admitted missing some visitations with her children, she testified that she only missed visitations when she was sick. However, according to the caseworker, LCCS personnel had observed that appellant had problems with managing all four children during her visits. There was evidence that Jordan was bonded with the foster caregivers because his counselor testified that initially he had a large amount of difficulty detaching from his foster mother. Further, the other children's interrelationship with their caregivers appeared positive by virtue of evidence of their significant developmental and physical progress while in their care. Finally, it appears that a relative placement home was used when the case was opened, but that there was a "disruption" that necessitated placement in foster care. LCCS demonstrated by clear and convincing evidence that the best interest of the children is served by permanent custody to LCCS.
 {¶ 43} Regarding the trial court's findings relative to R.C.2151.414(E), that the children cannot and should not be placed with either parent within a reasonable time, appellant contends that she "substantially completed" her case plan, visited the children regularly, and showed a commitment to the children. Further, she asserts that she remedied the conditions that caused her children to be removed.
 {¶ 44} The trial court acknowledged the services that appellant did complete in 2004. In fact, by virtue of the hope that these actions inspired, LCCS changed the case plan goal from permanent custody to reunification at one point. However, upon relapse, appellant ignored the caseworker's recommendation to re-engage in services immediately. In fact, the record reveals that appellant waited until the day of a court hearing to make a phone call to initiate relapse substance abuse services. In addition, to whatever degree there was any measure of stability in appellant's employment and housing, it apparently came at the eleventh hour. We agree with the trial court that there was clear and convincing evidence that appellant did "too little, too late." See In re Denzel M., 6th Dist. No. L-03-1337, 2004-Ohio-3982 at ¶ 21. LCCS demonstrated by clear and convincing evidence that the children cannot and should not be placed with either parent within a reasonable time. We find the manifest weight of the evidence supports the trial court's decision. Accordingly, appellant's assignment of error is not well-taken.
 {¶ 45} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County and for which execution is awarded. See App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J. Singer, P.J. Parish, J. concur.